IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

W. MATTHEW DAVIS,                 )
                                  )
        Plaintiff,                )
                                  )
v.                                )      CIVIL ACT. NO.  3:15cv752-CSC
                                  )                (WO)
JAY GOUGE, *et al*.,              )
                                  )
        Defendants.               )

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, the plaintiff W. Matthew Davis ("Davis") alleges that

his civil rights secured by the First and Fourteenth Amendments to the United States

Constitution were violated by the defendants at Auburn University.  Davis alleges that he was

subjected to a retaliatory termination in violation of his First Amendment right to freedom

of speech.  In addition, he asserts that he was denied substantive and procedural due process

rights.  Finally, he contends that he was terminated in violation of ALA CODE § 36-25-24,

Alabama's Whistleblower statute.[1]  The plaintiff names as defendants Jay Gouge, President

---

[1]  ALA CODE § 36-25-24 provides as follows.

(a) A supervisor shall not discharge, demote, transfer, or otherwise discriminate against a
public employee regarding such employee's compensation, terms, conditions, or privileges
of employment based on the employee's reporting a violation, or what he or she believes in
good faith to be a violation, of this chapter or giving truthful statements or truthful testimony
concerning an alleged ethics violation.

(b) Nothing in this chapter shall be construed in any manner to prevent or prohibit or
otherwise limit a supervisor from disciplining, discharging, transferring, or otherwise
affecting the terms and conditions of a public employee's employment so long as the
disciplinary action does not result from or is in no other manner connected with the public

of Auburn University; Jay Jacobs, Athletic Director of Auburn University; David Benedict, Chief Operating Officer of the Auburn Athletic Department; Rich McGlynn, Senior Associate Athletics Director of Auburn University; and Kevin Robinson, Executive Director of Internal Auditing for Auburn University.   The plaintiff seeks injunctive relief, reinstatement, lost wages, compensatory and punitive damages and attorney fees.  The court has jurisdiction of Davis' federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over his state law claim pursuant to 28 U.S.C. § 1367.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge.

 This case is pending before the court on the defendants' motion to dismiss the

---

employee's filing a complaint with the commission, giving truthful statements, and truthfully testifying.

(c) No public employee shall file a complaint or otherwise initiate action against a public official or other public employee without a good faith basis for believing the complaint to be true and accurate.

(d) A supervisor who is alleged to have violated this section shall be subject to civil action in the circuit courts of this state pursuant to the Alabama Rules of Civil Procedure as promulgated by the Alabama Supreme Court.

(e) A public employee who without a good faith belief in the truthfulness and accuracy of a complaint filed against a supervisor, shall be subject to a civil action in the circuit courts in the State of Alabama pursuant to the Alabama Rules of Civil Procedure as promulgated by the Supreme Court. Additionally, a public employee who without a good faith belief in the truthfulness and accuracy of a complaint as filed against a supervisor shall be subject to appropriate and applicable personnel action.

(f) Nothing in this section shall be construed to allow a public employee to file a complaint to prevent, mitigate, lessen, or otherwise to extinguish existing or anticipated personnel action by a supervisor. A public employee who willfully files such a complaint against a supervisor shall, upon conviction, be guilty of the crime of false reporting.

ALA CODE § 36-25-24 (1975).

plaintiff's amended complaint (doc. # 30) to which the plaintiff has responded (doc. # 32).[2] On February 2, 2016, the court heard oral argument on the motion to dismiss. After careful consideration of the motion to dismiss, the plaintiff's response, and for good cause, the court concludes the motion to dismiss is due to be GRANTED.

## II.  STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the court must accept well-pled facts as true, but the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, the court must indulge reasonable inferences in plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.. See also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550

---

[2] Also pending before the court is the defendants' joint motion to dismiss (doc. # 8) filed on November 25, 2015 and the plaintiff's motion to strike (doc. # 19) filed on December 21, 2015.  These motions were filed prior to the plaintiff's filing of an amended complaint on January 11, 2016. Consequently, these motions are due to be denied as moot.

U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and emphasis omitted). In *Iqbal*, the Supreme Court reiterated that although Fed. R. Civ. P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### III.  DISCUSSION

In Count One, Davis alleges he was terminated in retaliation for exercising his First Amendment right of freedom of speech when he spoke out about ticketing improprieties at Auburn University in the Tigers Unlimited program. In Count Two, the plaintiff alleges that he was denied substantive and procedural due of law because he was terminated without cause and for false reasons, and he did not receive a fair and impartial hearing. Finally, in Count Three, the plaintiff alleges that he was terminated in violation of the Alabama Whistleblower Act, Ala. Code § 36-25-4. The court addresses each claim seriatim.

### A.  Claims against Defendants in their official capacities for money damages.

To the extent Davis sues the defendants in their official capacities, the defendants

argue that they are state officers and entitled to Eleventh Amendment immunity. Consequently, they argue that they are not subject to civil liability under § 1983.[3]  *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).  *See also*, *Quern v. Jordan*, 440 U.S. 332 (1979) (holding that § 1983 was not intended to abrogate a state's Eleventh Amendment immunity).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L. Ed. 2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, [59], 116 S. Ct. 1114, 1125, 134 L. Ed. 2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

The plaintiff concedes that his claims for monetary damages against the individual defendants in their official capacities are due to be dismissed.  (Doc. # 32 at 8).  Thus, the defendants' motion to dismiss any claims for monetary relief against them in their official capacities is due to be granted because they are absolute immune from damages in their official capacities.

**B.    First Amendment Claim - Retaliatory Termination (Count One).**  The court now turns to Davis' claim that he was terminated in retaliation for exercising his First Amendment right to freedom of speech.  Specifically, Davis asserts that he

---

[3] Eleventh Amendment immunity does not foreclose suits for injunctive and/or declaratory relief; rather, if applicable, it forecloses suits for compensable damage awards.

spoke out as a private citizen about matters of public concern when he raised issues related to ticketing improprieties to Auburn University Chief Operating Officer David Benedict while acting as an alumni and fan.  Plaintiff further exercised his First Amendment rights as a private citizen to speak about matters of public concern when his representatives sent the December 11, 2014, letter on his behalf to various members of the Auburn University Administration and Board and certain Auburn University boosters which contained the statements he had earlier made to Benedict.

(Doc. # 25 at 9, ¶ 40).

A government employer may not terminate a public employee in retaliation for speech protected under the First Amendment. *See Rankin v. McPherson*, 483 U.S. 378 (1987) ( "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech."); *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) ("The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment.)  *See also Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1159  (11th Cir. 2015).  As a public employee Davis, however, "does not enjoy an absolute right to freedom of speech."  *Maggio v. Sipple*, 211 F.3d 1346, 1351 (11th Cir. 2000).  *See also Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013) *quoting Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).

In *Garcetti*, we described a two-step inquiry into whether a public employee's speech is entitled to protection:

> "The first requires determining whether the employee spoke as a citizen on a matter of public concern.  If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.  If the answer is yes, then the possibility of a First Amendment claim arises.

6

\*   \*   \*

> In describing the first step in this inquiry, *Garcetti* distinguished between employee speech and citizen speech.  Whereas speech as a citizen may trigger protection, the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Id*. at 421, 126 S.Ct. 1951.

*Lane v. Franks*, — U.S. —, —, 134 S.Ct. 2369, 2378 (2014).

The threshold issue, therefore, is whether Davis spoke as a citizen on  "matters of public concern."  *See Lane*, — U.S. at —; 134 S.Ct. at 2378.  *See also Connick v. Myers*, 461 U.S. 138 (1983); *Boyce v. Andrew*, 510 F.3d 1333, 1342 (11th Cir. 2007) (citing *D'Angelo v. School Bd. of Polk Cnty, Fla*., 497 F.3d 1203, 1209 (11th Cir. 2007)) (the court must determine "(1) if the government employee spoke as an employee or citizen and (2) if the speech addressed an issue relating to the mission of the government employer or a matter of public concern.").  If the court determines that the plaintiff did not speak "as a citizen on a matter of public concern," Davis "has no First Amendment cause of action based on his ... employer's reaction to the speech."  *Garcetti*, 547 U.S. at 418.  *See also D'Angelo,* 497 F.3d at 1209.

"Whether a plaintiff has engaged in speech protected by the First Amendment is a question of law which must be determined by the district court before a § 1983 claim can be submitted to the jury."  *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).  Davis alleges the following facts in his amended complaint.  *See* Doc. # 25.  Davis

was employed at Auburn University as the Director of Priority Program/Director of Sales for Auburn University's Tigers Unlimited ticket program. (Doc. # 25 at 3, ¶ 8). Davis reported to Tim Jackson[4] and David Benedict, the Chief Operating Officer of Auburn's Athletic Department. (*Id.* at ¶ 10). In 2014, during an audit, Davis discovered that "between 3,500 and 3,800 seats per year in the Tigers Unlimited donor area were not being utilized for the Tiger Unlimited program." (*Id.* at ¶ 11). According to Davis, these tickets were being sold at face value instead of at the Tigers Unlimited ticket premium price. (*Id*).

Sometime in June or July 2014, Davis "reported these seating discrepancies to David Benedict and told Benedict that the University was missing out on significant revenue by not selling these tickets through Tigers Unlimited." (*Id.* at ¶ 12). Davis reported other statements to Benedict regarding customers purchasing Tiger Unlimited tickets without the benefit of the Tigers Unlimited memberships. Davis was concerned that "hundreds of seats in the stadium [were] incorrectly marked and invoiced at a lesser contribution level causing losses in revenue and suggested to Benedict that the Tigers Unlimited per seat contributions be audited . . ." (*Id.* at 4, ¶ 16). In the amended complaint, Davis asserts that he spoke to Benedict because the "University was missing out on significant revenue by not selling these tickets through Tigers Unlimited." (*Id.* at 3, ¶ 12 and 4, ¶ 16).

---

[4] In the amended complaint, the plaintiff does not identify Jackson's role at Auburn University. However, in his brief in opposition to the motion to dismiss and at oral argument on the motion, counsel for the plaintiff asserted that Davis reported directly to Jackson. (Doc. # 34, Tr. at 25). Argument of counsel is, of course, not a substitute for evidence. The burden is on the parties to present facts in support of their positions. *See generally Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Thus, the court considers only the facts stated in the amended complaint.

In the fall of 2014, the University, in conjunction with the Athletic Department, began an investigation into alleged gambling involving student athlete information. (*Id*., at 4, ¶ 18). While investigating the alleged gambling, it was discovered that Davis was communicating with Mark Tilson, an Athletic Department consultant. (*Id*. at 4-5, ¶ 19). Unbeknownst to Davis, Tilson's consulting contract had ended, and Tilson was bidding on a new contract for sales and marketing support to the Tigers Unlimited program. (*Id*. at 5, ¶¶ 19 & 20). According to the University, Davis' communications with Tilson during the bid process were inappropriate. (*Id*. at ¶ 21).

On September 19, 2014, Davis was called into a meeting with Kevin Robinson, the Director of Internal Accounting, and questioned about Tilson's bid for the sales contract. (*Id*. at ¶ 23). On September 24, 2014, Davis was suspended from his position at Auburn University pending further investigation. (*Id*. at 6, ¶ 24).

Davis retained counsel and on December 11, 2014, his attorney "sent a letter to numerous Auburn officials and board members[5], . . . inquiring into Davis' employment status and raising several concerns, including the 'alleged' investigation that was being conducted by Kevin Robinson and detailing the previous complaints that Davis raised with Benedict prior to the Athletic Department beginning an investigation into the vague allegations of gambling improprieties." (*Id*. at ¶ 25) (footnote added).

On December 18, 2014, Davis received a response from Auburn providing him notice

---

[5] In the amended complaint, Davis identifies Gouge and Jacobs as well as "numerous Auburn officials and board members" as recipients of the letter.

of the investigation into "his potentially releasing student athlete information for gambling purposes." (*Id*. at ¶ 26). Davis was also notified that during that investigation, his communications with Tilson was discovered. (*Id*.)

On February 17, 2015, Davis met with Auburn University officials and was presented with a termination letter. (*Id*. at 7, ¶ 29). Davis was "being terminated because his actions in communicating with Tilson were 'questionable at best.'" (*Id*.)

Davis was subsequently terminated "and notified of his rights to appeal through the grievance procedure." (*Id*. at 8, ¶ 38). There is no allegation in the amended complaint that Davis pursued an appeal of his termination.

In their motion to dismiss, the defendants assert that Davis' speech is not protected by the First Amendment because he was speaking as an employee and not a citizen, and he spoke on a matter related to his job duties and not on a matter of public concern.[6] *See* Doc. # 30 at 9-19. Davis responds that he spoke to Benedict as "a concerned Auburn alumni and fan of Auburn Athletics with the intent of helping the Athletic Department improving (sic) its financial situation" is sufficient to establish that he was speaking as a private citizen on a matter of public concern and defeat the defendants' motion to dismiss. The court cannot agree. Davis' conclusory statement that his reports to Benedict about the ticketing discrepancies were made as a concerned alumni and fan is a legal conclusion unsupported

---

[6] The defendants further assert that even if Davis' speech was protected by the First Amendment, they are entitled to qualified immunity. The court pretermits discussion of the defendants' qualified immunity defense.

by facts.

Because an employee's speech is "rarely []entirely private or entirely public," the court makes the determination of whether an employee's speech is a matter of public concern "by examining 'the content, form, and context of a given statement, as revealed by the whole record.'" *Maggio*, 211 F.3d at 1352 quoting *Connick*, 461 U.S. at 147. "The inquiry turns on the "content, form, and context" of the speech. *Lane*, — U.S. at —, 134 S.Ct. at 2380. After a thorough review of the amended complaint, considering the content, form and context of Davis' speech, the court concludes that Davis spoke primarily as an employee on matters related to his job.

First, when Davis spoke to Benedict, his speech concerned ticketing improprieties involving the Tiger Unlimited ticket program of which he was the Director.   He had access to the requisite information and learned about the ticketing discrepancies only through his employment at Auburn.  (Doc. # 25, Am. Compl. at 3, ¶ 11).  Davis reported his concerns to Benedict in Benedict's capacity as the Chief Operating Officer of the Auburn Athletic Department.  (*Id*., at ¶ 10). As the Director of the Priority Program/Director of Sales for the Tigers Unlimited program, Davis reported to Benedict, and his speech was related to his position as Director.  (*Id*.) Davis' speech to Benedict was motivated by his concern that the University "was missing out on significant revenue by not selling these tickets through Tigers Unlimited." (*Id*. at ¶ 12).

Davis' statements to Benedict were made internally and were designed to improve the financial condition of the department in which he was employed.  (*Id*. at 3, ¶ 12 and 4, ¶ 16).

11

He spoke to Benedict at his place of employment concerning matters that related to his job responsibilities. *See Alves*, 804 F.3d at 1161 ("Practical factors that may be relevant to, but are *not* dispositive of, the inquiry include the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job.") (emphasis in original).  All of Davis' speech to Benedict related to the Tigers Unlimited ticketing program and was related to his job as Director.  It matters not that Davis spoke to Benedict without first speaking to his supervisor Jackson because Davis admits in his amended complaint that Benedict was also his supervisor.  (Doc. # 25, Am. Compl. at 3, ¶ 10).[7]

Although Davis asserts that he was speaking as an alumni and a fan, this statement is simply a legal conclusion couched as a fact, and is insufficient to overcome all the facts that demonstrate that his speech was derived from his employment as Director of the Priority Program/Director of Sales for the Tigers Unlimited program.  Davis' speech about ticketing improprieties in the Tiger Unlimited ticket program "owes its existence" to his position as Director.  *See Garcetti*, 547 U.S. at 421-22 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe on any liberties the employee might have enjoyed as a private citizen.").  *See also Abdur-Rahman v. Walker*, 567 F.3d 1278, 1285 (11th Cir. 2009) ("Speech that owes its existence to the official duties of

---

[7]  Davis argues in brief, (Doc. # 32, Pl's Br. at 3) that his first speaking to Benedict supports a conclusion that "he was not raising these issues in the course of his job . . ." (*Id.*).  This inference is unwarranted.  Nothing in the amended complaint suggests that the administrative structure of the Auburn Athletics Department is rigidly hierarchical such that as an employee Davis could not communicate with Benedict.

public employees is not citizen speech even if those duties can be described so narrowly as to not mandate the act of speaking."). Davis' speech regarding ticketing improprieties cannot be separated from his employment as Director of the Priority Program/Director of Sales for the Tigers Unlimited program.  The subject matter of Davis' job was priority ticket sales through the Tiger Unlimited program.  Davis cannot divorce his speech about ticketing improprieties in the very program in which he was employed as the Director.  *See Id.*  The court concludes that Davis' speech was derived from and related to his job duties and responsibilities.  Davis' speech "was made in furtherance of his . . . responsibilities . . . and not as a private citizen."  *Moss v. City of Pembroke Pines*, 782 F.3d 613, 619 (11th Cir. 2015).  Thus, the court concludes that Davis was not speaking as a private citizen when he spoke to Benedict about his concerns about priority ticket sales through the Tigers Unlimited program.

Furthermore, the court concludes that the matters about which Davis spoke to Benedict all relate to Davis' concerns as the Director of the Priority Program/Director of Sales for the Tigers Unlimited program, and related to the manner in which tickets were being sold at Auburn University.  Thus, the speech was not on a matter of public concern. *See Maggio*, 211 F.3d at 1352 discussing *Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993). Davis' speech consisted of voicing his concern that non-Tiger Unlimited members were purchasing tickets without paying the membership premium.  As the Director of the Priority Program/Director of Sales for the Tigers Unlimited program, the "main thrust" of Davis' speech was not to "raise issues of public concern," but rather to raise concerns related to his

job responsibilities in the Tigers Unlimited program. Davis' speech was specifically related to ticketing sales in the very program over which he was the Director. *Maggio*, *supra*. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. *See also Abdur-Rahman*, 567 F.3d at 1283; *Moss*, 782 F.3d at 618; *Rister v. Meese*, 610 F. App'x 960, 960 (11th Cir. 2015). Thus, the court concludes that Davis was not speaking on matter of public concern when he advised Benedict of his concerns related to the Tiger Unlimited ticketing program.

> If the government employee speaks "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147, 103 S.Ct. at 1690.

*Maggio*, 211 F.3d at 1351-52. *See also Morgan*, 6 F.3d at 754.

Davis asserts that he 'spoke out' "while acting as an alumni and a fan." (Doc. # 25 at 9, ¶ 40). Nowhere in the amended complaint does Davis allege a public interest in his speech.[8] Moreover, Davis may not turn personal speech "into a matter of public concern by invoking a supposed popular interest in the way public institutions are run.'" *Boyce*, 510 F.3d at 1344. "[T]he mere fact that the topic of the employee's speech was one in which the

---

[8] At oral argument on the motion to dismiss, counsel asserted that the ticketing improprieties amounted "people stealing from the University" by a "scheme of people being hooked up with these tickets without having to pay the premium." (Doc. # 34, Tr. at 5). Argument of counsel is not a an acceptable substitute for facts missing from the amended complaint.

public might or would have had a great interest is of little moment." *Morgan*, 6 F.3d at 754

quoting *Kurtz v. Vickrey*, 855 F.2d 723, 727 (11th Cir. 1988).

Davis did not make his concerns about the Tigers Unlimited ticketing program public until after he was terminated, and as serious as his allegations were about ticket improprieties, Davis' speech was motivated by his position as Director of Priority Sales/Director of Sales for the Tigers Unlimited program. *See Morgan*, 6 F.3d at 754-55. "[T]he relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is "whether the purpose of [the plaintiff's] speech was to raise issues of public concern." *Maggio*, 211 F.3d at 1353. *See also Sherrod v. Bd. of St. Lucie Cty.*, 635 F. App'x 667, 672 (11th Cir. 2015) (Speech which happens "to touch on a topic of potential public concern is not enough to transform [it] into constitutionally protected speech.").

To the extent that Davis asserts that his representative's December 11, 2014 letter to Auburn University officials is protected speech under the First Amendment, Davis has failed to state a plausible claim that the speech was on a matter of public concern. In his amended complaint, Davis affirmatively states the following regarding the letter.

> 25.    Davis heard nothing from Auburn regarding the investigation and retained counsel to intervene. On December 11, 2014, Davis' counsel sent a letter to numerous Auburn officials and board members, including Gouge and Jacobs, inquiring about Davis' employment status and raising several concerns, including the "alleged" investigation that was being conducted by Kevin Robinson and detailing the previous complaints that Davis had raised with Benedict prior to the Athletic Department beginning an investigation into the vague allegations of gambling improprieties.

(Doc. # 25 at 6, ¶ 25).

In support of their motion to dismiss, the defendants attached a copy of the December 11, 2014 letter.  In general, when the court considers matters outside the pleadings on a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6), the motion is converted into a motion for summary judgment pursuant to FED.R.CIV.P. 56.  However, the court may consider exhibits attached to the motion to dismiss in certain circumstances.

> Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, *see In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d 970 (9th Cir.1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *See Harris v. Ivax Corp.,* 182 F.3d 799, 802 n. 2 (11th Cir.1999). "Undisputed" in this context means that the authenticity of the document is not challenged. *See, e.g., Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 16–17 (1st Cir.1998); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994).

*Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).  *See also Fuller v. SunTrust Banks, Inc.*, 744 F.3d 685, 696 (11th Cir. 2014) *abrogated on other grounds Stargel v. SunTrust Bank, Inc.*, 791 F.3d 1309 (11th Cir. 2015) ("This [C]ourt recognizes an exception, however, in cases in which [1] a plaintiff refers to a document in its complaint, [2] the document is central to [her] claim, [3] its contents are not in dispute, and [4] the defendant attaches the document to its motion to dismiss."); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n. 2 (11th Cir. 1999) ("[A] document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its content are not in dispute.")

Davis refers to the letter in his amended complaint.  *See* Doc. # 25 at 6, ¶¶ 25 & 26

16

and 9, ¶ 40.   The letter is central to Davis' claims, and Davis does not challenge the authenticity of the letter.   Thus, the court considers the contents of the letter when considering the defendants' motion to dismiss.   In the letter, Davis inquires about his employment status.   *See* Doc. # 30, Ex. D.   The letter, therefore, was motivated by Davis' interest in his continued employment.   *See Morgan*, 6 F.3d at 755; *Maggio*, 211 F.3d at 1354. Davis contends that because he sent the letter to "boosters" in addition to Auburn officials and board members, the letter constitutes speech by a citizen on a matter of public concern.

> As specifically set out in paragraphs 9, 11-17 above, Plaintiff spoke out as a private citizen about matters of public concern when he raised issues related to ticketing improprieties to Auburn University Chief Operating Officer David Benedict while acting as an alumni and fan.   Davis further exercised his First Amendment rights as a private citizen to speak about matters of public concern when his representative sent the December 11, 2014, letter on his behalf to *various members of the Auburn University Administration and Board and certain Auburn University boosters which contained the statements he had earlier made to Benedict.*

(Doc. # 25, Am. Compl. at 9, ¶ 40) (emphasis added).

Davis does not identify the boosters or the Auburn officials that received a copy of the letter.   However, it is apparent from the letter, that it was sent to employees of Auburn University, members of the Board of Trustees for Auburn University, and board members of the Tigers Unlimited Foundation.   *See* Doc. # 30, Ex. D.   The letter was not sent to members of the general public.   Thus, the court concludes that the letter was directly related to Davis' self interest in his employment with Auburn University.   The court further concludes that the letter was sent on Davis' behalf as an employee of Auburn University's athletic department, related to Davis' employment as Director of Priority Program/Director

of Sales of the Tigers Unlimited program, and was not a matter of public concern. Accordingly, for the reasons as stated, the court concludes that because the plaintiff has failed to establish that he spoke as a private citizen about matters of public concern, he has failed to state a plausible First Amendment claim, and the defendants' motion to dismiss is due to be granted.

**C. Substantial and Procedural Due Process Claims (Count Two)**.  The plaintiff's substantive and procedural due process claims are premised on his allegation that he was denied adequate notice of the allegations against him, was not informed of his rights, and was denied the opportunity to present witnesses at his pre-termination hearing.  (Doc. # 25 at 10, ¶ 47).  The court turns first to Davis' substantive due process claim.  In a very conclusory fashion, Davis contends that he was deprived "of his statutory and constitutional rights granted by the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983 and Ala. Code § 36-26-100 et seq."  (Doc. # 25 at 10, ¶ 44).

> "The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc).  Fundamental rights are those rights created by the Constitution. *DeKalb Stone, Inc. v. County of Dekalb, Ga*., 106 F.3d 956, 959 n. 6 (11th Cir. 1997) (per curiam).  "Property rights, or course, are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002).

*Greenbriar Village, L.L.C. v. Mountain Brook, City*, 345 F.3d 1258, 1263 (11th Cir. 2203).

Although Davis complains that his substantive due process rights were violated, he

must do more than simply assert that he is entitled to relief. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  *See also Fin. Sec. Assur., Inc. v. Stephens, Inc*., 500 F.3d 1276, 1282 (11th Cir. 2007) (plaintiff's "complaint must include "[f]actual allegations [adequate] to raise a right to relief above the speculative level" *quoting Twombly, supra*).  After a careful examination of the facts as stated in the amended complaint, the court concludes that Davis has failed to state a viable substantive due process claim.  The Eleventh Circuit has clearly stated that there is no substantive due process right to employment; rather only procedural due process rights are available to pretextually terminated employees. *McKinney v. Pate,* 20 F. 3d 1550, 1560 (11th Cir. 1994).  It follows then that plaintiff's claims for substantive due process violations are due to be dismissed with prejudice for failure to state a claim.

Davis also alleges that he was denied procedural due process in the pre-termination hearing process.  As a matter of law, no procedural due process violation occurs unless and until the state refuses to provide an opportunity to remedy the alleged bias,[9] or other procedural due process deprivations.[10]  The *McKinney* Court held that

> procedural due process violations do not become complete "unless and until the state refuses to provide due process." *Zinermon*, 494 U.S. at 123, 110 S.Ct. at 983. More specifically, in the case of an employment termination case, "due

---

[9] *McKinney v. Pate,* 20 F.3d 1550, 1562 (11th Cir. 1994).

[10] *Tinney v. Shores*, 77 F.3d 378, 381-82 (11th Cir. 1996).

19

process [does not] require the state to provide an impartial decisionmaker at the pre-termination hearing. The state is obligated only to make available 'the means by which [the employee] can receive redress for the deprivations.'" *Schaper v. City of Huntsville*, 813 F.2d 709, 715-16 (5th Cir. 1987) (quoting *Parratt v. Taylor*, 451 U.S. 527, 543, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981)) (footnote omitted). . . .

> *           *           *

[E]ven if [the plaintiff] suffered a procedural deprivation at the hands of biased [University officials] at his termination hearing, he has not suffered a violation of his procedural due process rights unless and until the State of [Alabama] refuses to make available a means to remedy the deprivation.  As any bias on the part of the [University officials] was not sanctioned by the state and was the product of the intentional acts of the [University officials], . . . only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural process violation.

*McKinney,* 20 F. 3d at 1562.

The court concludes that the plaintiff fails to allege a valid procedural due process claim because he has not alleged in his amended complaint that Alabama law provided him an inadequate post-deprivation remedy.  *See Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996).  Davis admits in his amended complaint that he was advised of his rights to appeal his termination through the grievance process.  (Doc. # 25 at 8, ¶ 38).  The plaintiff does not allege in his amended complaint that he attempted to take advantage of any state remedies and was denied; rather, the plaintiff chose to file his claim in federal court.  *See McKinney,* 20 F.3d at 1562.  Davis has the burden of demonstrating the absence of meaningful state post-deprivation proceedings.  This he fails to do.  Accordingly, the court concludes that the plaintiff has failed to state a  procedural due process claim upon which relief could be granted.

20

Furthermore, to invoke the protection of procedural due process, Davis must allege

> "(1) deprivation of a constitutionally protected property interest; (2) governmental action; and (3) constitutionally inadequate process." *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). We question whether Plaintiff[] successfully alleged the first element, *i.e.,* the deprivation of a constitutionally protected property interest. We have said that "no procedural due process claim exists until a sufficiently certain property right under state law is first shown." *Greenbriar Vill.* [*v. Mountain Brook City*,] 345 F.3d [1258], 1265 [(11th Cir. 2003) (per curiam)].

*Ford v. Strange*, 580 F. A'ppx 701, 711 (11th Cir. 2014)

Davis argues the employee handbook at Auburn University creates a property interest in his employment sufficient to support a procedural due process claim. The court concludes that Davis has not set forth sufficient facts to demonstrate that his procedural due process claim is plausible particularly in light of Alabama law. "The general rule in Alabama is that an employment contract at will may be terminated by either party with or without cause or justification." *McCluskey v. Unicare Health Facility, Inc.,* 484 So. 2d 398, 400 (Ala. 1986). *See also*, *Harper v. Winston County*, 892 So. 2d 346, 351 (Ala. 2004). However, "the employment-at-will relationship can be modified by provision in an employee handbook by which an employer promises not to discharge an employee except by specified procedures or for specified causes." *Campisi v. Scoles Cadillac, Inc.*, 611 So. 2d 296, 298 (Ala. 1992).

> Of course, to become a binding promise, the language used in the handbook **must be specific enough to constitute an actual offer rather than a mere general statement of policy**. However, whether a proposal is meant to be an offer for a unilateral contract is determined by the outward manifestations of the parties, rather than by their uncommunicated beliefs.... Indeed, if the employer does not wish the policies contained in an employee handbook to be construed as an offer for a unilateral contract, he is free to so state in the handbook.

21

*Hoffman–LaRoche, Inc. v. Campbell*, 512 So. 2d 725, 735 (Ala.1987) (emphasis added).

Davis makes general legal conclusions about the effect of language in the handbook but he does not include any language from the handbook, nor does he attach a copy of the handbook to his amended complaint.  The defendants attached a copy of the handbook to their motion to dismiss.  Because the handbook is central to Davis' procedural due process claim, and Davis does not dispute the contents of the handbook, the court properly considers the document.  *See Horsley*, 304 F.3d at 1134; *Harris*, 182 F.3d at 802, n.2.

The question of whether a handbook policy constitutes a binding contract "is a matter of law to be determined by the court."  *Stinson v. Am. Sterilizer Co*., 570 So. 2d 618, 621 (Ala. 1990).  A review of section 1.1.3 of the employee handbook establishes that the language is a general policy statement, not a specific promise sufficient to modify the employment-at-will relationship between Davis and Auburn University.

> Occasionally, the University, just as any other large organization, has to make decisions without prior consultation with its employees.  The University must, therefore, maintain executive discretion to exercise the customary functions of management including, but not limited to, the discretion to select, hire, promote, transfer, demote, suspend, dismiss, assign, supervise, and discipline employees; . . .**This manual is not an employee contract but rather a collection of university policies and information that will be of practical use to employees**.

(Doc. # 30, Ex. C at 5).

Under Alabama law, general policy statements in the handbook are insufficient to create a binding contract.  "If the employer reserves in the employee handbook the right to change policies unilaterally, its reservation operates as a disclaimer to negate any inference

22

that the handbook constitutes an enforceable contract." *Harper*, 892 So. 2d at 351.  The specific language of this section is sufficient to preclude enforcing the handbook as a contract.

Davis argues that section 8.5, Involuntary Terminations, creates a protectable property interest because that section provides that an employees "generally only subject to discipline for cause." (Doc. # 30, Ex. C at 43.).  A review of the entire section demonstrates that the language is not specific enough to alter Davis' at-will employment status.

> 8.5 **Involuntary Termination.**   Auburn University reserves the right to manage its workforce as stated in section 1.1.3.  However, consistent with sound management practices, employees are generally only subject to discipline or dismissal for cause.  Each individual case for dismissal will be evaluated on its own set of circumstances.  Proper procedures for dismissing an employee from the University are essential to ensure that any employee's rights are protected.  This is accomplished through an appropriate hearing which is conducted to ensure that the employee's position is heard and evaluated by supervision before any final decision is made. . . .

(*Id.*)

The provisions of the employee handbook, considered in its entirety, are not specific enough to create a binding employment contract.  The section states that employees "are generally" only subject to dismissal for cause, and it states that *each individual case . . . will be evaluated on its own set of circumstances*."  (*Id.*) (emphasis added).  Auburn retains "executive discretion . . . including, but not limited to, the discretion to . . . dismiss" employees.  The University also retains the discretion to deviate from or alter its policies and procedures.  *See* Doc # 30, Ex. C at 5.  Consequently, the court concludes that "the handbook, as a matter of law, could not reasonably be construed as a unilateral contract of

employment, modifying [Davis'] employment-at-will status; the handbook, as a matter of law, could not be construed as constituting an enforceable contract of employment." *Stinson*, 570 So. 2d at 622.  *See also Harper*, 892 So. 2d at 352.

Based on the state of the law in Alabama, coupled with the language contained in the handbook, the court concludes that the handbook language upon which Davis relies is not specific enough to constitute a binding promise.  Accordingly, the court concludes that Davis has failed to allege a plausible procedural due process claim, and the defendants' motion to dismiss is due to be granted.

**D.  State Law Whistleblower Claim (Count Three)**.  The court's exercise of supplemental jurisdiction over the remaining state law claim is discretionary.  Under 28 U.S.C. § 1367(c)(3), the court may "decline to exercise supplemental jurisdiction over a [state law] claim if the district court has dismissed all claims over which it has original jurisdiction  . . . "  The court declines to exercise supplemental jurisdiction over the plaintiff's state law claim, and this claim is due to be dismissed without prejudice.

## IV.  CONCLUSION

Accordingly, for the reasons as stated,  it is

ORDERED and ADJUDGED as follows:

1.    That the defendants' motion to dismiss the plaintiff's federal claims (doc. # 30) be and is hereby GRANTED and the federal claims be and are hereby DISMISSED with prejudice;

2.    That the plaintiff's state law claim be and is hereby DISMISSED without

prejudice;

       3.     That the defendants' joint motion to dismiss (doc. # 8) filed on November 25, 2015 be and is hereby DENIED as moot;

       4.     That the plaintiff's motion to strike (doc. # 19) filed on December 21, 2015. be and is hereby DENIED as moot; and

       5.     That this case be and is hereby DISMISSED.

       A separate final judgment will be entered

       Done this 15th day of July, 2016.


                                                   /s/Charles S. Coody
                                        CHARLES S. COODY
                                        UNITED STATES MAGISTRATE JUDGE